IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

DENNIS BURTON UNDERWOOD,

        Plaintiff,

                                            2:16-CV-1321-PK

                                            OPINION AND ORDER

v.


JANELL ROCHESTER, MARK NOOTH,
WILLIAM KING, MAUREEN ROSSI, and
BRAD CAIN,

        Defendants.

HERNÁNDEZ, District Judge:

        Plaintiff Dennis Burton Underwood, an incarcerated prisoner proceeding *pro se* and *in forma pauperis*, filed this action against defendants Robert Lampert and Janell Rochester on June

Page 1 - OPINION AND ORDER

28, 2016. Underwood amended his complaint effective August 8, 2016, adding as additional defendants Mark Nooth, Erik Johansen, and Jua Osman. Underwood amended his complaint a second time effective June 14, 2017, abandoning his claims to the extent alleged against Lampert, Johansen, and Osman, and adding as additional defendants William King, Maureen Rossi, and a fictitiously named Doe defendant. Effective July 25, 2017, Underwood amended his complaint a third time, naming Brad Cain as a defendant in lieu of the Doe defendant. Underwood amended his complaint a fourth time effective August 17, 2017. By and through his fourth amended complaint, Underwood alleges that while housed at the Snake River Correctional Institution ("SRCI"), he has been unduly restricted from accessing the SRCI law library and/or other legal research resources pursuant to SRCI policy as enforced by defendant Rochester, that after he grieved SRCI's policy of restricting inmate access to the law library Rochester began harassing and threatening him in retaliation, that after he grieved Rochester's retaliatory conduct King threatened him with bodily harm, and that in retaliation for his grievances Rossi deliberately caused Underwood to miss a filing deadline in his *pro se* efforts to appeal the conviction that resulted in his incarceration at SRCI by preventing him from copying and mailing his opening appellate brief, with the result that his filing deadline had to be extended by 27 days. Arising out of the foregoing, Underwood appears to allege the liability of defendants Nooth, Cain, and Rochester under 42 U.S.C. § 1983 for the violation of his Fifth, Sixth, and/or Fourteenth Amendment right of access to the courts, the liability of Rochester under Section 1983 for the violation of his purported First, Fifth, Sixth, and/or Fourteenth Amendment right to seek legal redress and to proceed *pro se*, the liability of defendant King under Section 1983 for the violation of his purported First Amendment due process rights and/or his purported Fifth,

Page 2 - OPINION AND ORDER

Sixth, and/or Fourteenth Amendment right to seek legal redress and to proceed *pro se*, and the liability of defendant Rossi for the violation of his purported Fifth, Sixth, and/or Fourteenth Amendment right to seek legal redress and to proceed *pro se*. Underwood seeks award of compensatory and punitive money damages from the defendants in unspecified amounts, this court's declaration that Underwood "has the right to reasonable law library access," and injunctive relief to enjoin defendants to provide him with "reasonable law library access" and to prevent "King from contacting [Underwood]." This court has federal question jurisdiction over Underwood's claims pursuant to 298 U.S.C. § 1331(a).

Now before the court are Underwood's motion (ECF No. 44) for a temporary restraining order and/or preliminary injunction to require defendants "to provide a constitutionally adequate grievance system" at SRCI and to enjoin "defendant King from having further contact with [Underwood] at any hearings" and Underwood's motion (ECF No. 61) for a temporary restraining order and/or preliminary injunction to require defendants to provide an adequate law library at SRCI and to provide SRCI inmates with "meaningful" access thereto. I have considered the motions and all of the pleadings and papers on file. For the reasons set forth below, Underwood's motions (ECF Nos. 44, 61) are denied.

## LEGAL STANDARD

A preliminary injunction is an "extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Natural Res. Def. Council*, 555 U.S. 7, 22 (2008). To establish entitlement to a preliminary injunction, a plaintiff is generally required to demonstrate that (i) the plaintiff is likely to succeed on the merits, (ii) the plaintiff is likely to suffer irreparable harm in the absence of preliminary relief, (iii) the balance

of equities tips in favor of the plaintiff, and (iv) the requested injunction would be in the public interest. *See id.* at 20. "The elements of [this] test are balanced, so that a stronger showing of one element may offset a weaker showing of another. For example, a stronger showing of irreparable harm to plaintiff might offset a lesser showing of likelihood of success on the merits." *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir.2011).

In the alternative, the courts of the Ninth Circuit recognize that a preliminary injunction may properly issue where "'serious questions going to the merits' and a hardship balance that tips sharply toward the plaintiff can support issuance of an injunction, assuming the other two elements of the *Winter* test are also met." *Id.* at 1132. Thus, a preliminary injunction may be granted "if there is a likelihood of irreparable injury to plaintiff; there are serious questions going to the merits; the balance of hardships tips sharply in favor of the plaintiff; and the injunction is in the public interest." *M.R. v. Dreyfus*, 697 F.3d 706, 725 (9th Cir. 2012), *citing Alliance for the Wild Rockies*, 632 F.3d at 1132.

Courts apply a more exacting standard when the moving party seeks a mandatory, as opposed to a prohibitory, preliminary injunction. *See Martin v. Int'l Olympic Comm.*, 740 F.2d 670, 675 (9th Cir. 1984) ("In cases such as the one before us in which a party seeks mandatory preliminary relief that goes well beyond maintaining the status quo *pendente lite*, courts should be extremely cautious about issuing a preliminary injunction"), *citing Anderson v. United States*, 612 F.2d 1112, 1114 (9th Cir. 1980). Mandatory injunctive relief is disfavored, and it should be denied at the preliminary injunction stage unless the facts and law clearly favor the moving party. *Stanley v. Univ. of S. Cal.*, 13 F.3d 1313, 1320 (9th Cir. 1994).

The standard for granting a temporary restraining order is "substantially identical" to the

standard for granting a preliminary injunction, *Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001), with certain caveats. Under Federal Civil Procedure Rule 65(b), a temporary restraining order may issue without notice to the opposing party or the opposing party's attorney only if the movant shows (i) through "specific facts in an affidavit or a verified complaint" that "immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition[,]" and (ii) that "the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required." Fed. R. Civ. P. 65(b)(1).

## MATERIAL FACTS

### I. The Parties

Plaintiff Underwood is an incarcerated prisoner currently housed in the Snake River Correctional Institution. Defendant Rochester is employed as a law library coordinator at SRCI. Defendant Nooth was formerly employed as the Superintendent at SRCI. Defendant King is employed as a grievance coordinator and as the Prisoner Rape Elimination Act compliance manager at SRCI. Defendant Rossi is employed as a law library coordinator at SRCI. Defendant Cain is employed as the Superintendent at SRCI.

### II. The Administrative Remedy Program at SRCI

Underwood has at all material times been housed at SRCI. At SRCI, Underwood has available to him a three-level grievance procedure consistent with the regulations set forth in Chapter 291, Division 109 of the Oregon Administrative Rules.

Pursuant to the SRCI grievance procedures and applicable Oregon Administrative Rules, "[i]f an inmate is unable to resolve an issue through informal communications, . . . the inmate

Page 5 - OPINION AND ORDER

[may] seek resolution of the issue by submitting a written grievance using the department's approved inmate grievance form (CD 117). . . ." OAR-291-109-0140(1)(a). Any such grievance "must include a complete description of the incident, action, or application of the rule being grieved, including date and approximate time," and should be accompanied by any referenced documents. OAR-291-109-0140(1)(b). Matters, actions, and incidents that an inmate may properly grieve are the "misapplication of any administrative directive or operational procedure," the "lack of an administrative directive or operational procedure," any "unprofessional behavior or action which may be directed toward an inmate by an employee or volunteer of [ODOC] or the Oregon Corrections Enterprises," any "oversight or error affecting an inmate," any "program failure as defined in . . . OAR-291-077-0020," except where such failure was caused by the inmate's misconduct, the "loss or destruction of [the inmate's] property," sexual conduct between an ODOC employee and an inmate, or sexual abuse of an inmate by another inmate. OAR-291-109-0140(2). "An inmate grievance may request review of just one matter, action, or incident per inmate grievance form." OAR-291-109-0140(1)(d). Similarly, inmates are not permitted to grieve the actions of more than one ODOC employee through a single grievance form, but rather must file one grievance form per ODOC employee whose actions are the subject of the inmate's challenge. *See* OAR-291-109-0140(5). In addition, inmates are not permitted to grieve any claim or issue "that the inmate is pursuing in pending litigation in state or federal courts." OAR-291-109-0140(3)(h). A grievance will not be processed unless it is received by the applicable grievance coordinator on form CD 117 "within 30 calendar days of the date of the incident giving rise to the grievance." OAR-291-109-0150(2).

Inmates are permitted to file "no more than two initial inmate grievances in any one week

Page 6 - OPINION AND ORDER

or six in any calendar month," other than grievances regarding sexual abuse, and other than separate grievances grieving multiple ODOC staff members in connection with the same incident. OAR-291-109-0180(1). Grievances filed in excess of those limits are summarily denied with the notation that the inmate has committed "abuse" of the grievance system. *Id.*

Upon receipt of an inmate grievance, a grievance coordinator is required to "assign the grievance a number," date stamp the grievance, "and record its receipt in an inmate grievance log" and to "send a grievance receipt to the inmate." OAR-291-109-0160(1) and (1)(a). The grievance coordinator is then required to coordinate with the ODOC employee best suited to respond to the grievance, and to send the inmate's grievance to that person "for reply." OAR-291-109-0160(1)(b). The response must "be returned to the grievance coordinator for processing within 21 calendar days." OAR-291-109-0160(1)(c). Following such processing, the grievance coordinator is required to send the inmate copies of both the grievance and the response, and to retain copies for the grievance coordinator's files, all within "45 days from the date the grievance was received" by the grievance coordinator, "unless further investigation is necessary." OAR-291-109-0160(2). In the event the grievance coordinator fails to complete processing of the grievance within 45 days of its receipt, "the grievance coordinator will make an effort to notify the inmate of the status of the grievance." *Id.* "If the inmate does not receive a response within the allotted time frame, he/she may contact the grievance coordinator." *Id.*

"If at any time the grievance coordinator determines the inmate has pursued his/her grievance through state or federal courts, the grievance process will cease and the grievance will be returned to the inmate." OAR-291-109-0160(4). "A grievance that has been returned to [an] inmate by the grievance coordinator for procedural reasons cannot be appealed." OAR-291-109-

Page 7 - OPINION AND ORDER

0160(5).

An inmate may appeal the institutional response to the inmate's grievance by and through "the grievance appeal form (CD 117c)." OAR-291-109-0170(1)(a). Any such appeal "must be submitted to the grievance coordinator together with the original grievance, attachments, and staff response(s)." *Id.* The scope of the originally submitted grievance cannot be expanded on appeal, and the inmate is not permitted to add new information regarding the grieved incident on appeal, except where such information was unavailable to the inmate at the time the original grievance was filed. *See id.* Any such appeal must be received by the grievance coordinator "within 14 days from the date that the grievance response was sent to the inmate from the grievance coordinator." OAR-291-109-0170(1)(b). The grievance coordinator is required to send the appeal to the "functional unit manager," who is required to respond to the appeal "within 30 calendar days." OAR-291-109-0170(1)(c). The grievance coordinator is then required to send the functional unit manager's appeal response to the inmate. *See id.*

In the event an inmate wishes to appeal the functional unit manager's decision regarding a grievance appeal, the inmate may do so "using the grievance appeal form (CD 117c)." OAR-291-109-0170(2)(a). Any such appeal "must be submitted to the grievance coordinator together with the original grievance, attachments, staff responses, and documentation related to the first grievance appeal." *Id.* The grievance coordinator must receive any such appeal "within 14 calendar days from the date that the first grievance appeal response was sent to the inmate from the grievance coordinator." OAR-291-109-0170(2)(c). As with the first appeal, appeal of the functional unit manager's response cannot expand the scope of the original grievance, and cannot adduce new information regarding the originally grieved incident, except where such

Page 8 - OPINION AND ORDER

information was unavailable to the inmate at the time the original grievance or first appeal was filed. *See* OAR-291-109-0170(2)(a). The grievance coordinator is required to forward any such appeal to "the Assistant Director having authority to review and resolve the issue." *Id.*

The Assistant Director with such authority is required to respond to any such appeal from a functional unit manager's grievance appeal response "within 30 calendar days." OAR-291-109-0170(2)(e). "The Assistant Director's . . . decision on an inmate's grievance appeal is final, and is not subject to further [administrative] review." OAR-291-109- 0170(2)(f).

### III. The Parties' Material Evidentiary Proffers

Underwood offers his declaration testimony that while housed at SRCI he has attempted to avail himself of the grievance procedures available there, but has had grievances rejected on unspecified grounds, *see* Declaration (ECF No. 45) of Dennis Underwood ("Underwood Decl. I"), ¶¶ 1-2, has not been provided with the rules governing the filing of grievances, *see id.*, ¶ 4, has appeared for an appeal "hearing" only for the hearing to be canceled, *see id.*, ¶ 3, and has been threatened with harm in the event he filed further grievances containing false accusations, with the consequence that he refrained for a time from further availment of the grievance system, *see id.*, ¶¶ 6-7, 16-17.

Underwood offers his further declaration testimony that he needs to perform legal research in connection with his pending appeal from the conviction that resulted in his incarceration at SRCI, *see* Declaration (ECF No. 62) of Dennis Underwood ("Underwood Decl. II"), ¶¶ 2-3, 6-9, 12-13, 18, 21, 23, 25, that some of his legal work product was "inexplicably erased" from a thumb drive while stored at SRCI, *id.*, ¶ 14, and that he faces restrictions on his access to the SRCI law library, including restriction of certain law texts to in-library use only,

Page 9 - OPINION AND ORDER

restriction on law library access time to 2.5 hours per week for computer use and 1 hour per week for legal research, failure to have a "comprehensive policy" for handling inmate requests for additional law library time, prohibition against retaining copies of legal documents, prohibition against retaining drafts of legal work product, restrictions on printing documents, restrictions on the hours when the law library is accessible to inmates, restrictions on inmates employed to assist the SRCI law library coordinators providing assistance to other inmates, restrictions on talking in the law library, *see id.*, ¶¶ 70-71, 72, 74, 75-77, 86, 88-89, 94-96, 99, 100, 102.

Defendants offer into evidence the declaration testimony of defendant King that he has met with Underwood on only one occasion, *see* Declaration (ECF No. 58) of Bill King ("King Decl."), ¶¶ 6, 10, that he has never on any occasion threatened Underwood in any manner, *see id.*, ¶¶ 5, 10, 14, 15, 16, and that he investigated Underwood's allegations of misconduct by defendant Rochester, that he was unable to corroborate them in any degree, and that Underwood's statements regarding Rochester's conduct were internally inconsistent in significant respects, *see id.*, ¶¶ 6, 8, 10-12.

## ANALYSIS

Because defendants have responded to Underwood's motions now before the court, I evaluate the merits of the motions under the standard applicable to motions for preliminary injunction rather than the standard applicable to motions for temporary restraining orders.

I.  **Underwood's Motion (ECF No. 44) for Immediate Injunctive Relief Regarding the SRCI Grievance System and Regarding Contact with Defendant King at Hearings**

   A.  **Underwood's Entitlement to Immediate Injunctive Relief Regarding the SRCI Grievance System**

   Underwood is clearly not entitled to the injunctive relief he seeks in connection with the

grievance system available to him at SRCI. First, he cannot show that he is likely to prevail on the merits in connection with any claims arising out of any defects in the SRCI grievance system because his claims do not in any sense arise out of any such defects, and this, without more, is sufficient grounds to deny the requested relief. *See, e.g., De Beers Consol. Mines v. U.S.*, 325 U.S. 212, 220 (1945); *see also Little v. Jones*, 607 F.3d 1245, 1251 (10th Cir. 2010); *Colvin v. Caruso*, 605 F.3d 282, 299-300 (6th Cir. 2010); *Omega World Travel, Inc. v. Trans World Airlines*, 111 F.3d 14, 16 (4th Cir. 1997); *Devose v. Herrington*, 42 F.3d 470, 471 (8th Cir. 1994). Second, because under the Prison Litigation Reform Act (the "PLRA") the consequence of a correctional institution's failure to provide an adequate grievance system is that inmates seeking to bring claims in federal court regarding the conditions of their confinement are excused from the obligation to exhaust available administrative remedies before bringing their claims, *see* 42 U.S.C. § 1997e(a), *Ross v. Blake*, 136 S. Ct. 1850, 1859-1860 (2016), *Nunez v. Duncan*, 591 F.3d 1217, 1226 (9th Cir. 2010), Underwood cannot establish that any such failure – even if proven – would result in irreparable injury if the requested injunctive relief were not granted. Third, in light of the relatively minor burden imposed by the restrictions and the need for institutions like SRCI to allocate limited law-library resources equitably among those in need of them, nothing in the record before the court has any tendency to suggest that the balance of equities would tip in Underwood's favor on this issue. Fourth, for the same reason, nothing in the record before the court has any tendency to suggest that the requested injunctive relief would be in the public interest. Fifth, for the same reasons discussed above in connection with the first *Winter* factor (plaintiff's likelihood of prevailing on the merits), the request for injunctive relief in connection with SRCI's grievance system raises no serious question going to the merits of

Underwood's claims. For the foregoing reasons, Underwood's motion (ECF No. 44) for a temporary restraining order and/or preliminary injunction is DENIED to the extent Underwood seeks injunctive relief in connection with the grievance system at SRCI.

### B. Underwood's Entitlement to Immediate Injunctive Relief Regarding Contact with Defendant King at Hearings

Underwood is likewise not entitled to the injunctive relief he seeks in connection with contact with defendant King at hearings. First, in light of King's declaration testimony directly contradicting Underwood's allegations and testimony regarding his conduct, I cannot find on the current record that Underwood has established a significant likelihood of success on the merits of his claim against King. Second, nothing in the record suggests that Underwood is likely to suffer irreparable harm in the event he is required to have contact with King at hearings. Third, again in light of King's declaration testimony, I do not find that the balance of equities tips in Underwood's favor. Fourth, similarly in light of King's declaration testimony, I do not find that the record establishes that the requested injunctive relief would be in the public interest. Fifth, nothing in the record raises serious questions going to the merits of Underwood's claim against King. For the foregoing reasons, Underwood's motion (ECF No. 44) for a temporary restraining order and/or preliminary injunction is DENIED to the extent Underwood seeks injunctive relief in connection with contact with King at hearings.

### II. Underwood's Motion (ECF No. 61) for Immediate Injunctive Relief Regarding the Adequacy of the SRCI Law Library and Inmate Access Thereto

As I noted in my Order (ECF No. 9) dated August 8, 2016, denying Underwood's previous motion for immediate injunctive relief in connection with SRCI's law library and law library policies, in *Bounds v. Smith*, 430 U.S. 817, 828 (1977), the Supreme Court held that "the

Page 12 - OPINION AND ORDER

fundamental constitutional right of access to the courts requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." However, prisoners do not have "an abstract, freestanding right to a law library or legal assistance" and a prisoner "cannot establish relevant actual injury simply by establishing that the prison's law library . . . is subpar in some theoretical sense." *Lewis v. Casey*, 518 U.S. 343, 351 (1996). Rather, a prisoner must demonstrate that he has suffered actual injury to contemplated or existing litigation. *Id.* at 351-53; *see also Hebbe v. Pliler*, 627 F.3d 338, 343-344 (9th Cir. 2010) (a prisoner may state a claim if he was impermissibly denied the opportunity to appeal his conviction). Moreover, "[s]peculative injury does not constitute irreparable injury sufficient to warrant granting a preliminary injunction." *Caribbean Marine Servs. Co. v. Baldridge*, 844 F.2d 668, 674 (9th Cir. 1988).

As I found in connection with Underwood's previous motion, Underwood is not entitled to the immediate injunctive relief he requests by and through the motion now before the court. First, Underwood has failed to establish either a significant likelihood of success on the merits of his access to the courts claim or that he is likely to suffer irreparable injury in the event the requested injunctive relief is not granted, in that his allegations and declaration testimony do not suggest that he has experienced or will experience any actual irreparable injury as a consequence of the SRCI law library's purported inadequacy or of SRCI's policies regarding law library access, such as inability to present his claims or meet his filing deadlines, but rather merely that he has been forced to seek and obtain extensions from the Oregon Court of Appeals. Such delays do not constitute actionable actual injury sufficient to give rise to an access to the courts claim. *See*

*Lewis*, 518 U.S. at 346-349. Second, for the same reasons, Underwood has not established either that the balance of the equities tips in his favor in connection with his access to the courts claim or that the requested injunctive relief would be in the public interest. Fifth, likewise for the same reasons, Underwood has not established the existence of serious questions going to the merits of his claim. For the foregoing reasons, Underwood's motion (ECF No. 61) for a temporary restraining order and/or preliminary injunction to require defendants to provide an adequate law library at SRCI as well as meaningful inmate access thereto is DENIED.

## CONCLUSION

For the reasons set forth above, Underwood's motions (ECF Nos. 44, 61) for temporary restraining order and/or preliminary injunction are DENIED.

Dated this 26th day of July, 2018.

/s/ Marco Hernández
Honorable Marco A. Hernández
United States District Judge